HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

8

9

10

11

12

13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM GARY FUGITT,<br><br>                    Defendant-Petitioner,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Plaintiff-Respondent. | CASE NO. C16-5423-RBL<br><br>(CR05-5896-RBL)<br><br>ORDER GRANTING PETITIONER'S<br>§  2255 MOTION<br><br>DKT. #1 |

14   THIS MATTER is before the Court on Defendant-Petitioner William Fugitt's Motion to

15   Vacate/Correct his Sentence under 28 U.S.C. § 2255 [Dkt. #1].[1] A grand jury indicted Fugitt in

16   December 2005 for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)

17   and an Armed Career Criminal under 18 U.S.C. § 924(e)(1). Following an April 2007 bench

18   trial, he was convicted. He stipulated to being an ACC, given his prior violent felony convictions

19   for Washington second-degree burglary, first-degree child molestation, and two counts of

20   indecent liberties, which raised his sentencing range from a ten-year statutory maximum to a

21

22   [1] The United States Court of Appeals for the Ninth Circuit authorized Fugitt's second
     § 2255 filing, concluding he made a *prima facie* showing that his sentence is unconstitutional
23   under *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2551 (2015), which deemed the Armed
     Career Criminal Act's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii) (defining "violent felony"),
24   unconstitutionally vague. *See* Dkt. #69, USCA Order.

1    fifteen-year mandatory minimum. *See* U.S.S.G. § 4B1.4(b). On September 21, 2007, the Court

2    sentenced Fugitt to 293 months imprisonment with five years supervised release. He claims to

3    have been imprisoned for over ten years.

4           Fugitt argues his sentence is unconstitutional after *Johnson v. United States*, 576 U.S. __,

5    135 S. Ct. 2551 (2015), because without the Armed Career Criminal Act's residual clause, his

6    prior convictions do not meet the Act's definition of "violent felony," 18 U.S.C. § 924(e)(2)(B).

7    He asks the Court to grant him habeas relief by vacating his ACCA-enhanced sentence. The

8    Government argues that even though Fugitt's prior convictions would not qualify as violent

9    felonies today, the Court should deny him relief because (1) his claim is untimely and (2)

10   procedurally defaulted, and (3) he has not proved that the Court relied on the residual clause

11   when sentencing him.

## I.    BACKGROUND

13          Federal law forbids certain people, such as convicted felons, from shipping, receiving, or

14   possessing firearms. *See* 18 U.S.C. § 922(g). It punishes violators with up to 10 years'

15   imprisonment. *See* § 924(a)(2). But if the violator has three or more earlier convictions for a

16   "*violent felony*" or a "serious drug offense," the ACCA increases his prison term to a mandatory-

17   minimum of 15 years. *See* § 924(e)(1) (emphasis added). A violent felony is "any crime

18   punishable by imprisonment for a term exceeding one year … that:

> (i) has as an element the use, attempted use, or threatened use of
> physical force against the person of another;
> or
> (ii) is burglary, arson, or extortion, involves the use of explosives,
> or
> *otherwise involves conduct that presents a serious potential risk of*
> *physical injury to another*."

1  § 924(e)(2)(B) (emphasis added to distinguish the residual clause from the elements clause and

2  the enumerated offenses clause, respectively).

3        In 2015, the Supreme Court held the definition's final clause—its residual clause—

4  unconstitutionally vague. *See Johnson v. United States*, 135 S. Ct. at 2563. It later concluded

5  *Johnson* had announced a new substantive rule with constitutional underpinnings that applies

6  retroactively to cases on collateral review. *See Welch v. United States*, __ U.S. __, 136 S. Ct.

7  1257, 1265 (2016) (applying test in *Teague v. Lane*, 489 U.S. 288, 310, 109 S. Ct. 1060 (1989)).

8  Defendants determined to be ACC under the residual clause before *Johnson* therefore warrant

9  resentencing.

10        Fugitt argues his ACCA-enhanced sentence is unconstitutional because his prior

11  convictions no longer qualify as violent felonies. He argues his Washington second-degree

12  burglary (RCW 9A.52.030(1) (1985)) and child molestation (RCW 9A.44.083 (1989))

13  convictions qualified as "violent felonies" only under the residual clause's definition. And while

14  the Court could have relied on the elements clause when determining his indecent liberties

15  convictions (RCW 9A.44.100(1)(a) (1985)) constituted ACCA predicates, it could not reach that

16  conclusion today, because the statute does not require juror unanimity on the offender's use of

17  force, and the offense is not enumerated.

18        The Government concedes Fugitt's second-degree burglary and child molestation

19  convictions would not qualify as ACCA predicates today (although it argues his indecent

20  liberties conviction would), [2] but it argues the Court cannot reach the merits of this dispute. It

21

22
        [2] If the Court determines two of Fugitt's prior convictions fell under the residual clause's
23  definition, it may stop its analysis, because the ACCA requires a defendant to have been
        convicted of three or more prior violent felonies for the Court to impose an enhancement.
24

DKT. #1 - 3

1 argues his claim is untimely because he relies on pre-*Johnson* case law and procedurally

2 defaulted because he neglected to raise these issues on direct appeal. It also argues that because

3 the Court accepted Fugitt's ACC stipulation without further elaboration, he cannot prove that it

4 necessarily relied on the residual clause when sentencing him.

**II.       DISCUSSION**

6 **A.       Standard of Review.**

7       A prisoner in federal custody may petition the court that sentenced him to vacate, set

8 aside, or correct his sentence if it imposed his sentence "in violation of the Constitution or laws

9 of the United States" or lacked "jurisdiction to impose such sentence," or if his sentence

10 exceeded "the maximum authorized by law" or "is otherwise subject to collateral attack." 28

11 U.S.C. § 2255(a). The asserted error of law must be a fundamental defect resulting in "a

12 complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S. Ct. 2298

13 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429, 82 S. Ct. 468 (1962)).

14 **C.       Timeliness.**

15       Fugitt makes defensive arguments that his prior convictions could not and cannot qualify

16 under the elements or enumerated clauses because the Washington statutes for second-degree

17 burglary and child molestation do not require the use of force and are overbroad and indivisible.

18 He relies on pre-*Johnson* case law to argue his prior convictions necessarily fell under the

19 residual clause: *Johnson v. United States*, 559 U.S. 133, 130 S. Ct. 1265 (2010) (defining

20 "physical force" as "violent force"—force capable of causing physical pain or injury to another)

21 (*Johnson I*) and *Descamps v. United States*, __ U.S. __, 133 S. Ct. 2276 (2013) (Courts may not

22 apply the categorical approach to ACCA sentencing when the defendant's crime-of-conviction is

23 indivisible.).

24

1    The Government concedes Fugitt filed his application for permission to file a second

2  § 2255 motion within one-year of the Supreme Court's *Johnson* decision. It argues, however,

3  that he cannot timely rely on *Johnson I* and *Descamps* because their holdings are not retroactive.

4    Fugitt retorts that his entire petition is timely because he could not have earlier argued

5  that his prior convictions no longer constitute ACCA predicates, since they would have

6  continued to meet the residual clause's broad definition of "violent felony."  He argues he may

7  support his argument with *Johnson I's* and *Descamps'* holdings because as reiterations of settled

8  rules, their holdings represent the results the courts always should have reached when comparing

9  his convictions to the violent felony clauses, and they apply retroactively.

10    A petitioner seeking relief under § 2255 has one year from (1) his date of conviction, (2)

11  the date on which a government-created impediment to making such a motion is removed, (3) the

12  date on which the facts supporting the claims presented could have been discovered, or (4) "the

13  date on which the right asserted was initially recognized by the Supreme Court, if that right has

14  been newly recognized by the Supreme Court and made retroactively applicable to cases on

15  collateral review." 28 U.S.C. § 2255(f).

16    Fugitt asked the Ninth Circuit for permission to file a second § 2255 motion within one

17  year of *Johnson's* retroactive decision. His reliance on pre-*Johnson* case law does not undermine

18  the crux of his petition, making it untimely, because without *Johnson*, his prior convictions

19  would continue to meet the residual clause's definition. *See United States v. Ladwig*, No. 2:03-

20  CR-00232-RHW, 2016 WL 3619640, at *5 (E.D. Wash. June 28, 2016). Nor is his reliance on

21  these arguments misplaced. Settled rules—those dictated by precedent existing when a

22  defendant's conviction became final—apply retroactively on collateral review. *See Chaidez v.*

23  *United States*, __ U.S. __, 133 S. Ct. 1103, 1107, 185 L. Ed. 2d 149 (2013) (Unless a *Teague*

24

1   exception applies, "[o]nly when [the Supreme Court] appl[ies] a settled rule may a person avail

2   herself of the decision on collateral review."). Both *Johnson I* and *Descamps* applied settled rules

3   of law. *See In re Jackson*, 776 F.3d 292, 296 (5th Cir. 2015); *see also Ezell v. United States*, 778

4   F.3d 762, 766. The Court may therefore consider Fugitt's defensive arguments about why his

5   Washington second-degree burglary and child molestation convictions never properly qualified

6   as ACCA predicates under the enumerated or elements clauses.

7   **D.      Procedural Default.**

8         The Government argues Fugitt's claim that his convictions no longer qualify as violent

9   felonies is procedurally defaulted because he failed to raise it on direct review. Fugitt argues the

10  Court should excuse his default, allowing him to raise the argument now, because (1) it was not

11  available to him until the Supreme Court decided *Johnson*, and (2) retrospectively, the Court

12  unconstitutionally enhanced his sentence. The Government does not contest that the ACCA

13  enhancement prejudiced Fugitt, but it argues the Court should not excuse his failure to earlier

14  argue that the residual clause is unconstitutionally vague. It contends that even though this

15  argument was more-often-than-not unsuccessful, it was not so novel that a defendant could

16  ignore the need to preserve it. Indeed, the Government argues, Johnson successfully presented

17  the argument to the Supreme Court after it had twice disregarded it.

18        "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection

19  was made, a convicted defendant must show both (1) 'cause' excusing his double procedural

20  default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United*

21  *States v. Frady*, 456 U.S. 152, 167–68 (1982). "Cause" excusing a procedural default includes "a

22  showing that the factual or legal basis for a claim was not reasonably available to counsel."

23  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A claim was not reasonably available if it is based

24

1   on a Supreme Court decision that "explicitly overrule[d] one of [its] precedents." *Reed v. Ross*,

2   468 U.S. 1, 17 (1984). "Actual prejudice" exists when there is a reasonable probability that the

3   court would have imposed a lighter sentence without the error to which the petitioner failed to

4   object. *See Strickler v. Greene*, 527 U.S. 263, 289 (1999).

5   Fugitt has shown both cause and prejudice. The Supreme Court explicitly overturned its

6   precedent (*James v. United States*, 550 U.S. 192, 127 S. Ct. 1586 (2007) and *Sykes v. United*

7   *States*, 564 U.S. 1, 131 S. Ct. 2267 (2011)) when holding the ACCA's residual clause

8   unconstitutional. *See Johnson*, 135 S. Ct. at 2563. Fugitt could not have successfully argued that

9   his prior convictions do not qualify as ACCA predicates until after the Supreme Court decided

10  *Johnson*. Also, his sentence would not have exceeded the ten-year statutory maximum for being

11  a felon in possession had the Court not determined he qualified as an ACC. Fugitt may therefore

12  argue his sentence is unconstitutional after *Johnson* without seriously implicating any of the

13  concerns requiring deference to a procedural bar.

14  **E.      Reliance on the Residual Clause.**

15  The Government argues that to receive habeas relief, Fugitt must prove that the Court

16  relied on the ACCA's residual clause by a preponderance of the evidence. It argues he cannot

17  meet this burden because the Court accepted his stipulation without expounding which ACCA

18  clauses his prior convictions satisfied. Fugitt disagrees that he bears this burden. He argues the

19  residual clause's availability to the Court, and the Government's insistence that the Court rely on

20  it, infected his sentencing with constitutional error. He also argues that the completeness of a

21  court's analysis at sentencing cannot provide a principled basis for distinguishing which § 2255

22  petitioners later receive habeas relief. The Government argues that even if Fugitt could show that

23

24

1    the Court did more than accept his ACC stipulation, he cannot show that the Court did not

2    mistakenly rely on another clause to conclude his prior convictions constitute ACCA predicates.

3           The Court has pondered how a petitioner can establish that a constitutional error occurred

4    as a matter of fact where no descriptive record exists for the habeas court's review. When a

5    sentencing court accepts a stipulation that a defendant's prior convictions constitute violent

6    felonies under the ACCA, typically no record exists explaining whether his prior convictions fit

7    the elements clause, the enumerated offenses clause, or the residual clause. The court makes the

8    final determination, but the parties evaluate the relationship between the defendant's prior

9    convictions and the violent felony clauses behind closed doors. The Court has concluded that in

10   the context of habeas review of an ACCA-enhanced sentence where the defendant stipulated to

11   his ACC classification, the benefit of the doubt lies with the petitioner: the Court presumes his

12   predicate offenses only satisfied the residual clause. *See, e.g., Murray v. United States*, 15-cv-

13   5720-RJB, 2015 WL 7313882, at *5 (W.D. Wash. Nov. 19, 2015) (applying the rule of lenity in

14   the petitioner's favor where the record was unclear why the defendant's prior convictions

15   classified as violent felonies); *Gibson*, 2016 WL 3349350, at *1–2 (following *Murray* and

16   relying on *O'Neal* to conclude that when "grave doubt" exists about the constitutionality of the

17   petitioner's sentence, the reviewing court must conclude the sentencing court relied on the

18   residual clause). Here, however, the Court need not even reach this presumption, as the

19   Government concedes Fugitt's first-degree burglary and child molestation convictions could

20   have properly fallen within the residual clause only.

21          **1.      Method of Analysis.**

22          To determine whether a defendant's past convictions qualify as violent felonies, a court

23   uses the three-step process set forth in *Descamps v. United States*, __ U.S. __, 133 S. Ct. 2276

24

1   (2013); *see also United States v. Gardner*, 823 F.3d 793 (4th Cir. 2016) (applying the *Descamps*

2   approach to assess whether North Carolina common law robbery meets the elements clause

3   definition of "violent felony" under the ACCA). First, a court uses the categorical approach to

4   "compare the elements of the statute forming the basis of the defendant's conviction with the

5   elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Descamps*, 133 S.

6   Ct. at 2281. It may not look to the particular facts underlying the defendant's conviction. *See*

7   *Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143 (1990). The defendant's "prior

8   conviction qualifies as [a] … predicate only if the statute's elements are the same as, or narrower

9   than, those of the generic offense." *Id*. If the relevant statute sweeps more broadly than the

10   generic crime, a conviction under that law cannot serve as an ACCA predicate, even if the

11   defendant actually committed the offense in its generic form. *Id*. at 2283, 86.

12       When a statute is overbroad, the court may turn to step two: determining whether the

13   statue is divisible or indivisible. If the statute is overbroad and indivisible—it does not contain

14   alternative elements—the court's inquiry ends; "a conviction under an indivisible, overbroad

15   statute can never serve as a predicate offense." *See Almanza-Arenas v. Lynch*, 815 F.3d 469, 475

16   (9th Cir. 2016) (quoting *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015)).

17       If the statute of conviction is divisible—if it effectively creates several different crimes

18   by setting out multiple alternative elements—courts may apply the modified categorical

19   approach. *Id.* at 2281; *see also Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2249 (2016).

20   "The critical distinction is that while indivisible statutes may contain multiple, alternative means

21   of committing the crime, only divisible statutes contain multiple, alternative elements of

22   functionally separate crimes." *Rendon v. Holder*, 782 F.3d 1077, 1086 (9th Cir. 2014) ("[T]he

23   Supreme Court regards *elements* as those circumstances on which the jury must unanimously

24

1 agree, while it regards *means* as those circumstances on which the jury may disagree yet still

2 convict.").

3        This third step enables a sentencing court to determine which alternative element formed

4 the basis of the defendant's prior conviction by permitting it to consult a limited class of

5 documents. *Descamps*, 133 S. Ct. at 2285. The judge may "peek" at the indictment, jury

6 instructions, plea colloquy, and plea agreement to determine whether the listed items are

7 elements of the offense and then comparing them to the elements of the generic offense. *See*

8 *Mathis*, 136 S. Ct. at 2256–57. A court still may not examine the underlying facts. *See*

9 *Descamps*, 133 S. Ct. at 2285. For example, if instead of listing multiple elements disjunctively,

10 a statute enumerates various factual means of committing a single element, a court may not ask

11 whether the defendant's conduct falls within the generic definition, because a jury did not have

12 to agree on the means he employed. *See Mathis*, 136 S. Ct. at 2256; *see also Rendon*, 782 F.3d at

13 1086. Illustrative statutes are therefore often too broad to serve as ACCA predicates. *See, e.g.*,

14 *Mathis*, 136 S. Ct. at 2257 (holding Iowa burglary, which set out alternative means of fulfilling

15 its locational element that were broader than the locational element of generic burglary,

16 overbroad).

17        **2.        Washington Second-Degree Burglary.**

18        Fugitt was convicted under the 1985 version of Washington's second-degree burglary

19 statute: "A person is guilty of burglary in the second degree if, with intent to commit a crime

20 against a person or property therein, he enters or remains unlawfully in a *building* other than a

21 vehicle." RCW 9A.52.030(1) (1985) (emphasis added). Besides its ordinary meaning, the statute

22 also defines "building" as including "any dwelling, fenced area, vehicle, railway car, cargo

23 container, or any other structure used for lodging of persons or for carrying of business therein,

24

1 or for the use, sale, or deposit of goods." RCW 9A.04.110. "[E]ach unit of a building consisting

2 of two or more units separately secured or occupied is a separate building." *Id*.

3       The Court could not have concluded Washington second-degree burglary satisfies the

4 elements clause because the statute does not have "as an element the use, attempted use, or

5 threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see*

6 *also Johnson I*, 559 U.S. at 140.

7       It also could not have fallen within the enumerated offenses clause because it is

8 overbroad and indivisible. *See* 18 U.S.C. § 924(e)(2)(B)(ii); *see also Almanza-Arenas*, 815 F.3d

9 at 475. It is not, and could not have properly been, a categorical match with generic burglary. *See*

10 *United States v. Hines*, 150 F. Supp. 3d 1227, 1229 (E.D. Wash. 2015). Generic burglary

11 requires the "unlawful or unprivileged entry into, or remaining in, a building or structure, with

12 intent to commit a crime." *Descamps v. United States*, __ U.S. __, 133 S. Ct. 2276, 2295 (2013)

13 (referencing W. LaFave & A. Scott, Substantive Criminal Law § 8.13, p. 464 (1986)).

14 Washington burglary encompasses additional physical areas. *See Hines*, 150 F. Supp. 3d at 1229.

15 The statute is indivisible because it does not require a jury to unanimously conclude which type

16 of "building" the defendant entered. *See id*. at 1230 (referencing the Washington Pattern Jury

17 Instructions). Fugitt's burglary conviction therefore only constituted an ACCA predicate under

18 the now-excised residual clause.

19       **3.**      **Washington First-Degree Child Molestation.**

20       Fugitt was convicted under the 1989 version of Washington's child molestation statute:

21 "A person is guilty of child molestation in the first degree when the person has sexual contact

22 with another who is less than twelve years old and not married to the perpetrator and the

23 perpetrator is at least thirty-six months older than the victim." RCW 9A.44.083 (1989).

24

1    Fugitt's conviction cannot fall under the elements or the enumerated offenses clause. The

2    statute does not include "as an element the use, attempted use, or threatened use of physical force

3    against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); *see also Johnson I*, 559 U.S. at 140.

4    And molestation is not an enumerated offense. Therefore, Fugitt's conviction could only have

5    qualified under the residual clause. Without three prior violent felony convictions, the Court

6    cannot constitutionally classify Fugitt as an ACC. He warrants resentencing.

7                                  **III.    CONCLUSION**

8        Fugitt's Motion to Vacate/Correct his Sentence under 28 U.S.C. § 2255 [Dkt. #5] is

9    GRANTED. He and the Government shall work with the Court to schedule a mutually agreeable

10    date for his resentencing. The parties may submit sentencing memoranda.

11        IT IS SO ORDERED.

12        Dated this 26th day of September, 2016.

13

14                                                          _____

15                                                          Ronald B. Leighton
                                                            United States District Judge

16

17

18

19

20

21

22

23

24

DKT. #1 - 12